**CHAPMAN, et, Plaintiff-Appellees, v INDUSTRIAL COMMISSION, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20766. Decided May 10, 1948.

M. S. Cerrezin, Cleveland, for plaintiff-appellees.

H. S. Jenkins, C. H. Bernard, Cleveland, for defendant-appellant.

### ·OPINION

By SKEEL, J:

This action comes to this court on appeal on questions of law from a judgment of the common pleas court in favor of the plaintiff. The plaintiffs are the dependents of one Alphonse Chapman deceased.

During his lifetime, Alphonse Eugene Chapman was a regular employee of The Allyne-Ryan Company, a ·contributor to the State Insurance Fund administered by the defendant. The deceased was employed as a hand grinder. An examination of the record discloses that the place where the deceased worked as a grinder was about 75 feet from two sand blast machines which were enclosed in steel booths. On occasions the hose carrying sand to the sand blast operation would break, causing some dust outside the booths containing the sand blast machines. There is also some evidence that the grinding operation in which the deceased was engaged created some dust. The record also discloses that the deceased wore a mask while at work, the evidence on this point being as follows:

"Q. Were these grinders protected by any mask or anything?

A. Well?

Q. Chapman?

A. He wore a mask.

Q. You say he did, or didn't?

A. He generally wore one, I noticed him down there wearing one.

Q. Did all workers wear masks?

A. Yes, all that wanted one. I don't wear one because I can't get my breath through them."

The latter part of this answer was stricken out by the court.

The only other witness that testified about the use of masks when questioned about what would happen when the hose broke, said:

"Q. When the break would come in there, happen like that, what would the workers that were there do—could they stand there without any protection?

A. Oh they used to wear masks, they call it respirators. They have a sponge inside, wet it with water and put it on.

Referee: Do they do that every time?

```
Witness:  They wear it steady.
Referee:  Always put it on?
Witness:  Yes.
Referee:  When the machine broke?
Witness:  Yes."
```

On the afternoon of June 22, 1942, while deceased was at work under the usual and ordinary conditions, there being no evidence of any unusual occurrence causing an extraordinary amount of dust either at that time or during any part of that day, the deceased was seen going toward the dispensary, spitting frothy blood. He was given aid in the dispensary and from there he was taken to St. Alexis Hospital where his condition was diagnosed as pulmonary tuberculosis and he was released and remained at home until his case could receive attention at City Hospital. He entered City Hospital on July 22nd. He died there Oct. 24, 1942. The cause of death being pulmonary tuberculosis far advanced.

The defendant asserts the following assignments of error:

"1. The court of common pleas erred in refusing to grant defendant's motion to dismiss the petition and enter judgment for defendant on plaintiffs' opening statement.

2. The court of common pleas erred in overruling the defendant's motion for a directed verdict at the close of the testimony.

3. The court erred in permitting plaintiffs to introduce evidence over the objection of defendant, which ruling was prejudicial to the rights of defendant.

4. The verdict of the jury is contrary to law.

5. The court erred in giving special charges to the jury before argument, as requested by plaintiff, over the objection of defendant.

6. The verdict is manifestly against the weight of the evidence.

7. Further errors apparent on the face of the record."

The right of a workman or his dependents in case of death, to participate in the fund administered by the Industrial Commission of Ohio, is controlled entirely by statute, §1465-68 GC, which in part reads as follows:

"Every employee mentioned in §1465-61 GC who is injured and the dependents of such as are killed in the course of employment, whensoever such injury has occurred, provided the same was not purposely self-inflicted, on and after January 1, 1914, shall be entitled to receive * * *."

The prerequisite to the right to participate in the fund is that the employee shall have suffered an injury or that death resulted from an injury suffered while acting in the furtherance of and in the course and scope of the employee's duties. In the case now before us we are concerned with the question of whether or not there is any evidence tending to show that plaintiff's decedent, while acting in the course of his employment, suffered an injury which accelerated and aggravated a preexisting pulmonary tuberculosis, thereby hastening his death.

The evidence, as disclosed by the record, shows that the regular operation of the foundry caused some dust and that the job of grinding rough spots from finished castings which was the work of plaintiffs' decedent, caused particles of dust and metal to fly into the air. But as above indicated, on the last day the deceased worked there was no occurrence changing or increasing the amount of dust beyond that normally experienced in the regular operation of the foundry.

The plaintiff, in attempting to support the judgment in her favor relies on the case of **Industrial Commission v Polcen, 121 Oh St 377.** The facts of this case were that the claimant worked in the sulphuric department of a chemical plant. He received an inguinal hernia as a result of a violent coughing spell. He testified:

"Well . . . . when I went to work I was all right. I had no pain of any kind that I know of. We worked all day on the job until between 3 and 3:30. It was gassy all day on the job and I done a lot of coughing that day but about 3:30 or so I was overcome with gas and I went outside and I almost strangled from coughing, I got a little pain but I didn't think it was as bad as it was. I was outside about half an hour I judge and then went back to it as we often get to coughing down there; that same evening I told the wife about it. The next morning I had the same pain. It was Saturday and I put in a half day and coming back home I just made it and went home and washed up and went to my doctor and he told me I was ruptured he told me to go to the company doctor and I did on Monday. He examined me and told me I was ruptured."

Polcen testified further that there was no extraordinary rush of gas at the particular time when he 'almost strangled from coughing' and other witnesses testified that there was nothing special in the amount of gas or in the condition at that time, stating that they 'cough all the time' and that 'everybody coughs in the chemical works.'

Overruling the contention of the Industrial Commission of Ohio that upon such facts there was no "accidental injury upon which to found a claim for compensation the court held: (syllabus)

"Where the record shows that a claimant for compensation under the Workmen's Compensation Act, working in the sulphuric department of a chemical company, was caused by the emission of sulphuric fumes into the plant of such chemical company to have a coughing spell, which resulted in a hernia, such hernia constitutes an injury compensable under the Workmen's Compensation Act."

It is clear from the facts in Industrial Commission v. Polcen supra, that there was an injury caused by and coming about as a result of the circumstances under which the claimant worked. But in the case now before us, there is no evidence even tending to establish the suffering of an 'accidental injury' resulting from the circumstances or conditions under which the deceased was employed.

In the case of **Industrial Commission v Bartholome, 128 Oh St 13** a custodian of one of Cleveland's public schools was required to clean out the combustion chamber of the boiler twice a year. He entered upon this work one morning and while so engaged he inhaled a large quantity of soot, dust and gas. He managed to get out of the combustion chamber whereupon he was seized with a violent coughing spell. His cough thereafter progressed, he was forced to retire from his work and he died two years later. It was claimed that the inhalation of the soot and fine ashes caused an infection of his lungs resulting in tuberculosis or aggravating a latent condition of tuberculosis, thus causing or hastening his death.

The court on page 17 of the opinion says:

"It has been repeatedly held by this court that Workmen's Compensation does not come to claimants in the form of a pension. In other words it is not the 'wear' but the 'tear' that is compensable, leaving occupational diseases out of consideration as a matter of course. Bartholome undoubtedly died of tuberculosis. The Industrial Commission contends that as he had worked at his same occupation for a number of years the tuberculosis resulted from the breathing of dust and soot over a long period of time. **If that be true, Bartholome would not be entitled to compensation.** Bartholme's contention was to the effect that he was overcome by the fumes and

gas which had accumulated in the combustion chamber and that while in such condition he inhaled soot and fine ashes into his lungs, which caused him to contract tuberculosis, or aggravated a latent tubercular condition. Herein lies a dispute of fact, and there is credible testimony to support both theories.

Bartholome did not go into this combustion chamber every day. He entered it just twice a year. It was probably his business to see that the chamber was not heated and that it was free from gas and fumes before he entered it, but the fact that he may have failed to perform his duty along this line does not deprive him of compensation if he is otherwise entitled to it.

Reasonable minds might well arrive at different conclusions from the testimony along this line. If Bartholome in the performance of his duties had been required to enter this combustion chamber every day and breathe the gas and fumes complained of, and inhale a certain amount of ashes, dust and soot, a different case would be presented."

The Supreme Court in the case of **Palmer v Industrial Commission of Ohio, 126 Oh St 251,** in the first paragraph of the syllabus said:

"Where it is disclosed by the evidence that a workman in the course of his employment, was subjected to unusual emissions of carbon-monoxide gas upon two specific occasions, and that his disability and death resulted therefrom an award of compensation under the Workmen's Compensation Act will be sustained."

On page 254 of the opinion the rule is stated as follows:

"It is the contention of the Industrial Commission that the record shows that the decedent continually inhaled carbon monoxide gas over a long period of time, that this gradual absorption caused the death and, while fatal, does not constitute an injury.

The record shows that the decedent was subjected continually to the emissions of carbon monoxide gas. The bake ovens which Palmer tended were in a room in which for a long period of time during his employment no ventilation whatever was permitted; and raw charcoal was ignited for the purpose of securing the heat required. If this were all the testimony upon the point that the decedent was subjected to emissions of carbon-monoxide gas, and if there were not evidence in the record of unusual emissions of gas upon cer-

tain specific occasions, recovery would have to be denied under the authority of the Ohio decisions previously cited."

The plaintiff recognizing the rule of law that in order to participate in the insurance fund administered by the Industrial Commission of Ohio, the decedent must have suffered an injury while acting in the course and scope of his employment, requested the court to give certain instructions before argument, which requests were presented in writing. Requests No. 2 and No. 5 are as follows:

"2. If you find from a preponderance of all of the evidence in this case that Alphonso Chapman, the decedent herein, while in the course of his employment with the Allyne-Ryan Foundry Company and while working as a grinder on or about June 22, 1942, inhaled an excessive and unusual amount of dust, containing particles of sand and metal chippings, created by reason of the work engaged in at and near the location of the decedent's employment, and as a proximate result of the inhalation of such dust an already existing tuberculosis was so aggravated as to hasten the decedent's death, then you will find that the plaintiff is entitled to participate in the workmen's compensation fund.

5. If you find from a preponderance of all of the evidence in this case that the decedent was suffering from tuberculosis on and prior to about June 22, 1942 and on or about said date inhaled an unusual and excessive quantity of dust caused by the work in which he and other employees were then and there engaged, and that as a proximate result of the inhalation of such dust his existing tuberculosis was so aggravated as to hasten or accelerate his death, then you will find that the decedent sustained an accidental injury.".

There being no evidence that on the 22nd day of June, 1942 the deceased was subjected to an unusual and excessive amount of dust or fumes which caused an injury and hastened decedent's death the court committed error prejudicial to the rights of the appellant in overruling its motion for judgment at the conclusion of appellee's case and at the conclusion of all the evidence.

During the presentation of the plaintiff appellee's case, the plaintiff introduced the evidence of two medical expert witnesses in which these witnesses were asked to give their respective opinions as to whether or not there was any causal connection between the death or the acceleration of the death of decedent and his work by reason of the dust. The hypo-

thetical question included the following statement with respect to wearing a mask:

"So many of the workers wore masks and others did not."

The plaintiff's evidence shows that plaintiff's decedent wore a mask.

While, as a general rule, it is for the jury to say whether or not the facts included in a hypothetical question have been established by the preponderance of the evidence in considering the weight to be given to the answer to such question, yet the omission of a circumstance which would vitally affect the conclusion of the witness makes such question objectionable. To say that "some of the workers wore masks and others did not" when the only evidence in the record as to the conduct of the deceased is that he was one who did wear a mask, makes the hypothetical question subject to objection and to overrule such objections constitutes prejudicial error.

**Squire v Industrial Commission 46 Abs 392.**

For the foregoing reasons, the judgment of the common pleas court is reversed and final judgment is entered for the defendant appellant. Exceptions. Order See Journal.

HURD, PJ, MORGAN, J, concur.